## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

DAVID LAWRENCE ROSS,

     Petitioner,

-vs-                                 Case No.  8:03-CV-2118-T-27MAP

JAMES McDONOUGH,[1]

     Respondent.

_____/

### ORDER

     Petitioner, a State of Florida inmate represented by counsel, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 challenging convictions entered by the Sixth Judicial Circuit Court, Pinellas County, Florida (Dkt. 1).  Respondent has filed a response to the petition (Dkt. 4), and Petitioner has filed a reply thereto (Dkt. 9). The matter is now before the Court for consideration on the merits.

### Background

     Petitioner was charged by Information on May 25, 2000 with uttering forged checks (61 counts) and engaging in a scheme to defraud (1 count) (Dkt. 7, Ex. 1 at R. 7). *See State v. Ross*, Case No. CRC-00-08444CFANO (Fla. 6th Jud. Cir. Ct. 2000). Post-*Miranda*[2] Petitioner made both an oral and a written confession to the charges. Since Petitioner was on probation on convictions for uttering forged checks (2 counts), when the new offenses

_____

[1]James McDonough, the current Secretary of the Florida Department of Corrections, is substituted as the proper party respondent for James V. Crosby. Fed. R. Civ. P. 25(d) (2006).

[2]Established in *Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966), the Fifth Amendment right to counsel is intended to operate prophylactically to protect a defendant from making self-incriminating statements during his arrest or interrogation that might be used against him in the course of subsequent legal proceedings.

were committed, he was subsequently charged with violating the terms of his probation. *See State v. Ross*, Case No. CRC-97-00656CFANO (Fla. 6th Jud. Cir. Ct. 2000).

On June 16, 2000, Petitioner was charged by Information with grand theft, *see State v. Ross*, Case No. CRC-00-09774CFANO (Fla. 6th Jud. Cir. Ct. 2000). At that time, Petitioner also had a misdemeanor battery charge pending, *see State v. Ross*, Case No. CTC-00-005187MMANO (Fla. 6th Jud. Cir. Ct. 2000).  When Petitioner entered his plea to the uttering charges on July 31, 2000, he also pled guilty to the charges of grand theft, violation of probation, and battery. The battery and violation of probation convictions are not at issue in the instant case.[3]

Petitioner was sentenced to time served on the battery charge and consecutive terms of 5 years in prison for violation of probation and grand theft. In Case No. CRC-00-08444CFANO, Petitioner was sentenced on Counts 1 through 15 to concurrent terms of 5 years in prison, with the sentences to run consecutively to the 5-year term imposed on the grand theft count; on Counts 16 through 30 to concurrent terms of 5 years probation, with the sentences to run consecutively to the above referenced prison terms; on Counts 17 through 45, to concurrent terms of 5 years probation, with the sentences to run consecutively to the prior period of probation; and on Counts 46 through 62, to concurrent terms of five years probation, with the sentences to run consecutively to the prior periods

---

[3]Contrary to Respondent's reading of the petition (Dkt. 4 at 3), based on Petitioner's statements in the petition and his reply (Dkt. 9 at 1-2), the Court has determined that Petitioner is challenging his convictions for "uttering forged check[s] (61 counts), scheme to defraud, [and] grand theft" (Dkt. 1 at 2), in Case Nos. CRC 00-08444CFANO and CRC 00-09774CFANO. Since these two cases have progressed through the state courts together, an expansion of the record is not necessary for the disposition of the issues raised herein.

of probation, resulting in an overall sentence of 15 years incarceration to be followed by a 15-year term of probation. Petitioner did not file a motion to withdraw his plea.[4]

Appearing on Petitioner's behalf on direct appeal, the assistant public defender filed an *Anders* brief[5] stating that after reviewing the record and law on arguable points, she could find no meritorious argument to support the contention that the trial court committed significant reversible error (Dkt. 7, Ex. 4). The only issue in the record that she indicated might arguably support an appeal was whether the trial court erred in accepting Petitioner's pleas and in sentencing him. *Id.* Although afforded an opportunity to do so, Petitioner failed to file a *pro se* appellate brief. Petitioner's convictions and sentences were affirmed on direct appeal on July 6, 2001 in a per curiam decision without written opinion, *see Ross v. State*, 792 So. 2d 460 (Fla. 2d DCA 2001), with the mandate issuing on August 2, 2001.

Petitioner, represented by retained counsel, filed an application for state post-conviction relief pursuant to Fla. R. Crim. P. 3.850 on March 18, 2002, asserting that his "plea was involuntary in that he was coerced by the [trial] court" and "the sentencing guidelines score sheet was incorrectly calculated" (Dkt. 7, Ex. 8). The trial court summarily denied Ground One of Petitioner's Rule 3.850 motion, finding that it was conclusively refuted by the record, and directed the State to file a response to Ground Two. Petitioner's Rule 3.850 motion was denied on July 23, 2002, and his motion for rehearing challenging the trial court's rejection of Ground Two was denied on July 30, 2002 (Dkt. 7, Exs. 12 and

---

[4]*See Robinson v. State*, 373 So. 2d 898, 902 (Fla. 1979) ("[A]n appeal from a guilty plea should never be a substitute for a motion to withdraw a plea. . . . issues concerning the voluntary or intelligent character of the plea . . . should first be presented to the trial court in accordance with the law and standards pertaining to a motion to withdraw a plea.").

[5] *Anders v. California,* 386 U.S. 738 (1967).

13). The trial court's decision was affirmed on April 30, 2003 with the mandate issuing on May 28, 2003. *See Ross v. State*, 853 So. 2d 422 (Fla. 2d DCA 2003) (table decision).

Petitioner filed a timely petition for federal habeas relief on October 6, 2003 raising two claims for relief:

1.  Petitioner's guilty plea was coerced by the trial court initiating plea discussions and advocating a plea; and

2.  Petitioner was not properly asked [during the] plea colloquy whether he was threatened or coerced to enter [a] plea, and thus [his] plea was involuntary.

Dkt. 1 at 5.

This Court conducted an evidentiary hearing on March 16, 2007, following which Respondent and Petitioner filed memoranda of law addressing issues raised in the evidentiary hearing. Petitioner's state court trial attorney, Dyril Flanagan and Susan Hoffman, Esq., a former assistant state attorney ("ASA"), testified. Although afforded an opportunity to do so, Petitioner did not testify or otherwise address the Court during the evidentiary hearing.

### Standard of Review

Pursuant to 28 U.S.C. § 2254(a), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), enacted and effective on April 24, 1996, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Where a state court initially considers the issues raised in the petition and enters a decision on the merits, 28 U.S.C. § 2254(d) governs the review of those claims. *See Penry v. Johnson,* 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003).

Habeas relief may not be granted with respect to a claim adjudicated on the merits in a state court unless the adjudication of the claim:

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). *Price v. Vincent*, 538 U.S. 634, 638-39 (2003); *Clark v. Crosby*, 335 F.3d 1303, 1308 (11th Cir. 2003). Even where a state court denies an application for post-conviction relief without written opinion, in this circuit that decision is entitled to the same deference as if the state court had entered written findings to support its decision. *See Wright v. Sec. of Dep't of Corrs.*, 278 F.3d 1245, 1255 (11th Cir. 2002). "[A] state court's decision is not 'contrary to . . . clearly established Federal law' simply because the court did not cite [Supreme Court] opinions. . . . [A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) (quoting *Early v. Packer,* 537 U.S. 3, 7-8 (2002)). Finally, a state court's factual finding is presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## Discussion

Since Petitioner's convictions were entered after AEDPA was enacted, his petition is subject to the provisions thereof. Because a state court initially considered the claims raised by Petitioner, § 2254(d) governs the review of his claims. *See Mobley v. Head*, 267 F.3d 1312, 1316 (11th Cir. 2001).

**Ground One**

In Ground One, Petitioner contends that when he appeared for a pretrial conference on July 31, 2000, Judge Richard A. Luce initiated plea bargaining discussions, effectively coercing him into entering a guilty plea in deprivation of his right to due process:

> When Petitioner announced for trial, the trial court advised him that [the] case was "almost an impossible task for any defense attorney," that his exposure was over 300 years, that [the] court made "a rather modest offer" of 15 years that was "not going to get any sweeter," that the trial "could involve consecutive sentences longer than you care to think about," that [the] offer was "for today only," and "you're probably going to rue the day that you didn't take advantage of this deal."

Dkt. 1 at 5. Petitioner further contends that Judge Luce's comments violated the due process safeguards endorsed by the Florida Supreme Court in *State v. Warner*, 762 So. 2d 507, 513-14 (Fla. 2000)[6] (holding that "[t]he trial court must not initiate a plea dialogue; rather, at its discretion, it may (but is not required to) participate in such discussions upon request of a party . . . . and "[o]nce involved, the court may actively discuss potential sentences and comment on proposed plea agreements."). For reasons discussed, this claim has no merit.

As the Supreme Court has clarified, '[a] plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment." *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). Because guilty pleas waive all but jurisdictional claims up to the time of the plea, *Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973), *Bridges v. State*, 376 So. 2d 233, 233-

---

[6]After noting that several states, the federal system, and the American Bar Association's Standards for Criminal Justice Relating to Guilty Pleas expressly prohibited judicial participation in plea negotiations and considering the benefits and risks thereof, the Florida Supreme Court decided to permit limited judicial participation in plea negotiations with certain safeguards it concluded were necessary " to minimize the potential coercive effect on the defendant, to retain the function of the judge as a neutral arbiter, and to preserve the public perception of the judge as an impartial dispenser of justice." *Warner, supra,* at 513.

34 (Fla. 1979), once a petitioner enters a plea, the scope of the federal habeas inquiry becomes limited to whether the plea was voluntarily and intelligently made, and district courts are precluded from inquiring into any antecedent constitutional infirmities. *See Tollett*, 411 U.S. at 266. *See also United States v. Frye*, 402 F.3d 1123, 1127 (11th Cir. 2005). A federal court may, however, set aside a state court plea bargain if persuaded that the trial judge's participation in the plea bargaining process denied the petitioner his right to due process of law. *See Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980) (en banc), *modified on other grounds*, 646 F.2d 902 (5th Cir.) (per curiam), *cert. denied*, 454 U.S. 840 (1981).[7] The constitutional concern is that "judicial participation in plea negotiations not be so great as to render a guilty plea involuntary." *United States v. Adams*, 634 F.2d 830, 836 n. 3 (5th Cir. 1981) (citations omitted).

In the context of a guilty plea, due process is satisfied if a defendant understands the charges against him, understands the consequences of the plea, and voluntarily chooses to plead guilty without being coerced to do so. If this test is met, the guilty plea will be upheld on federal review. *Stano v. Dugger*, 921 F.2d 1125, 1141 (11th Cir. 1991).

When Petitioner presented the claim that his plea was involuntary in his Rule 3.850 motion, it was summarily rejected, with the trial court finding as follows:

> Defendant asserts that his guilty plea was involuntary and unintelligently entered into because "he was coerced by the Court." Defendant argues the Court informed him that "his cases presented an impossible task for any defense attorney" and that his sentence would not get "any sweeter" and it "could involve consecutive sentences longer than you care to think about."
>
> Upon review of the record, it is evident the Court did issue these statements. However, when these statements are viewed in context, it is clear the Court was explaining the case's characteristics and the possible sentencing structure to Defendant. [*See Exhibit 1: Transcript.*] The Court's comments

---

[7] Fifth Circuit decisions handed down prior to October 1, 1981, are binding precedent upon this Court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

regarding the possible sentencing structure were true statements and were not made to coerce Defendant. Furthermore, the colloquy reveals that Defendant rendered an apology to the Court indicating he had remorse for his actions and blamed his actions on a drug habit. [*See Exhibit 1: pg. 18-19.*] Furthermore, Defendant executed a Change of Plea form that indicated he was not coerced into entering the plea. [*See Exhibit 2.*] Also, during the plea colloquy, Defendant admitted no one was "threatening or forcing" him to admit he violated his probation. [*See Exhibit 1: Transcript, pg. 10.*] It is logical that Defendant was not thrilled when being advised of the consequences of his actions, but the fact the Court truthfully advised Defendant of the scenario, does not render his plea involuntary. The Court finds the record refutes Defendant's allegations and that Defendant voluntarily entered his plea. As such, this claim is denied.

Dkt. 7, Ex. 9 at 1-2. Testimony received during this Court's evidentiary hearing and the record support the trial court's adjudication of this claim.

While the trial transcript reflects that Judge Luce was a participant in an off-the-record discussion at the bench regarding the plea negotiations, a practice not condoned by the Florida Supreme Court,[8] contrary to Petitioner's assertions, this is not a case in which the trial judge initiated the plea negotiations. *See Warner*, 762 So.2d at 514. Because the bench conference was never transcribed, this Court conducted an evidentiary hearing on March 16, 2007 to determine what was discussed.  The Court received testimony from former Assistant State Attorney Hoffman and defense Attorney Flanagan.

According to Attorney Hoffman, discussions at the bench during pretrial conferences were generally not recorded in the Sixth Judicial Circuit. Attorney Hoffman testified, however, that she had an independent recollection of the pretrial conference in Petitioner's case because she was standing in for lead counsel, ASA Pat Siracusa (currently a Florida circuit court judge). Attorney Hoffman conferred with ASA Siracusa regarding the case before attending the pretrial conference. According to Attorney Hoffman, the handwritten

---

[8]"A record must be made of all plea discussions involving the court." *Warner, supra,* at 514.

notes regarding the terms of the plea offer that appear on the State's Felony Pretrial Conference Form, a copy of which was filed with this Court during the evidentiary hearing, *see* Dkt. 14, Ex. 1, were made by ASA Siracusa.

Attorney Hoffman confirmed that Judge Luce neither initiated nor participated in the plea negotiations. Attorney Hoffman testified that, to the contrary, the State Attorney's Office had arrived a plea offer prior to the pretrial conference that consisted of a minimum sentence of 15 years. She further testified that she was instructed that this was a "one-time offer", good only on the day of the pretrial conference.

Attorney Hoffman testified that, as was the practice at that time, prior to the commencement of the pretrial conference, she left the State's Felony Pretrial Conference Form laying on the table so defense counsel could review the annotations regarding the plea offer. According to Attorney Hoffman, when the pretrial hearing commenced, it was *Attorney Flanagan* who requested the bench conference, not Judge Luce. During the bench conference, Attorney Hoffman set out the terms of the State's plea offer and explained to Judge Luce that given Petitioner's oral and written post-*Miranda* confessions and the check templates discovered on Petitioner's computer for the 62 forged checks, the State was not willing to agree to a sentence any lower than 15 years. Attorney Hoffman advised Judge Luce and Attorney Flanagan that this was a "one-time" offer and if Petitioner did not accept its offer the State intended to file an amended information charging Petitioner with RICO, a first degree felony. Judge Luce was further informed that under Florida's sentencing guidelines, Petitioner was facing a range of 74.5 months to 340 years in prison.

According to Attorney Hoffman and confirmed by the state court transcripts, at the conclusion of the bench conference, Attorney Flanagan left the courtroom to confer with

Petitioner. When the hearing recommenced, Attorney Flanagan informed the trial court that Petitioner "was not prepared to accept" an offer of 15 years incarceration to be followed by a 15-year term of probation and announced that Petitioner was prepared to proceed to a trial by jury. *Id.* at 129.

As Attorney Hoffman recalled and the record confirms, Judge Luce had Petitioner brought into the courtroom and following a brief discussion on the record, Petitioner again conferred with Attorney Flanagan. When Attorney Flanagan and Petitioner returned to the courtroom, Attorney Flanagan informed Judge Luce that "[Petitioner] has reconsidered. *He's prepared to accept the offer the State has made.*" *Id.* at 132 (emphasis added). Attorney Hoffman testified that he did not find Judge Luce's comments to Petitioner coercive.

Attorney Flanagan, a criminal law practitioner since 1984, testified that he had no independent recall of what transpired at Petitioner's pretrial conference, but that he had reviewed the transcript of the proceedings. Attorney Flanagan did recall that the State had a "solid" case and he was attempting to obtain a better plea offer on Petitioner's behalf. Attorney Flanagan testified that while he does not recall specifically, he probably would have recommended that Petitioner accept the State's offer, but it was "100%" Petitioner's decision.

Attorney Flanagan testified that he had appeared before Judge Luce many times prior to being assigned Petitioner's case and knew that it was Judge Luce's practice to bring a defendant before the court and explain what his sentencing exposure was and the likely outcome at sentencing. Attorney Flanagan stated that based on his experience, Judge Luce was just stating the law and potential consequences of the choice the defendant was asked to make. He characterized Judge Luce's comments to Petitioner as

truthful and noncoercive and consistent with the communications he had with ASA Siracusa before the hearing and with Attorney Hoffman during the bench conference. Significantly, Attorney Flanagan stated that, in his opinion, Petitioner's decision to accept the State's plea offer was freely and voluntary made, without any element of coercion. Attorney Flanagan did not remember whether he checked the State's Felony Pretrial Conference Form before requesting the bench conference, but he did recall that the State's plea offer was originally 25 years and the 15 year offer was a concession if the plea was entered that day.

Testimony during the evidentiary hearing was credible and entirely consistent with the transcript of the pretrial conference. The record clearly reflects that Petitioner, with advice of counsel, made an informed choice with full knowledge of the nature of the charges against him and the consequences of his plea. Notably, Petitioner's decision to change his plea was not a swift change in position following Judge Luce's comments. To the contrary, Petitioner conferred with Attorney Flanagan before deciding to enter a plea, and the record reflects that Petitioner acknowledged during the plea colloquy that he was satisfied with Attorney Flanagan's performance.

In this case, the testimony received during the evidentiary hearing, the written plea form signed by Petitioner and Attorney Flanagan, and the transcript of the plea hearing establish that Petitioner's due process protections were met.[9] Petitioner acknowledged that he understood the maximum penalty for each charge by initialing the section of the plea form delineating what Petitioner's sentence would be under the agreement. In executing

_____

[9]When Petitioner executed the plea agreement form he averred: "I am entering this plea because I believe it is in my best interest to do so and it is what I wish to do of my own free will. No one has pressured me or forced me to enter this plea against my will" (Dkt. 7, Ex. 3 ¶ 9). Attorney Flanagan informed the trial court that he had reviewed the plea form "in detail with [Petitioner and he fully underst[ood] it." *Id.*, Ex. 2 at R. 133.

the plea form, Petitioner certified that he entered the plea "freely and voluntarily" and that

he had discussed the charges with Attorney Flanagan, including the maximum possible

(346 years) and mandatory minimum penalties and possible defenses, and that he was

satisfied with Attorney Flanagan's representation. During the plea colloquy, Petitioner

confirmed under oath that he understood the nature of the charges and the consequences

of the plea and stated that he was not threatened or forced in any way to enter a plea.[10]

In determining whether a defendant's due process rights have been met, a habeas

court places great weight on a defendant's sworn statements when entering the plea in

ultimately determining whether the plea was voluntary. "[R]epresentations of the defendant

. . . [at a plea proceeding] as well as any findings made by the judge accepting the pleas,

constitute a formidable barrier in any subsequent collateral proceedings. Solemn

declarations in open court carry a strong presumption of verity," *see Blackledge v. Allison*,

431 U.S. 63, 73-74 (1977), a presumption Petitioner has failed to overcome.

In this case, Judge Luce's statements gave no indication that he would retaliate if

Petitioner failed to plead guilty. A truthful and noncoercive statement of the possible

---

[10]As discussed *infra*, Petitioner contends that Judge Luce failed to ask him if anyone threatened or forced him to enter a plea to the uttering charges. The Court finds Petitioner's narrow reading of the transcript unpersuasive. Taken in context, Judge Luce cautioned Petitioner about the rights he would be giving up if he entered a plea of guilty to the uttering and grand theft charges, including the right to call witnesses or question the state's witnesses, the right to assert a defense to the charges, the presumption of innocence, the right to a trial where the prosecutor would be required to prove his guilt beyond a reasonable doubt before a jury, and the right testify or remain silent at a jury trial. Petitioner confirmed that he understood that by entering his plea he was giving up these rights. Judge Luce then asked Petitioner if he also had a violation of probation charge pending. When Petitioner responded in the affirmative, Judge Luce cautioned him that "by pleading guilty to the charge today of these new offenses, you're, in effect, admitting that you violated your probation; do you understand that?" Petitioner responded, "Yes, sir." Judge Luce advised Petitioner that he would be giving up all the things in the violation of probation case that he was giving up in the uttering and grand theft cases. Judge Luce then asked Petitioner if anyone was threatening or forcing him in any way to admit that he violated his probation, and Petitioner responded, "No, sir." Petitioner asserts that this response related only to the violation of probation charge. The Court concludes that Petitioner's affirmation that no one was threatening or forcing him to admit to violating his probation essentially affirmed that he had not been threatened or forced to plead guilty to the uttering charges, as Petitioner acknowledged that the commission of these uttering charges violated the terms of his probation.

-12-

penalties that an accused faces may be given to the accused without overbearing one's free will. Judge Luce's comments fell far short of a threatening "plead-or-else" statement. Petitioner fails to demonstrate that Judge Luce's statements affected in any way Petitioner's understanding of the charges against him or the consequences of his plea or made his decision to forego his right to a trial any less knowing or less voluntary.

As to Petitioner's reliance on the decision in *Warner*, the Florida Supreme Court has recognized that its holding in *Warner* permits a trial judge to "respond to a request from a defendant as to what sentence the judge would impose in exchange for a guilty plea." *Wilson v. State*, 845 So. 2d 142, 151 (Fla. 2003). Moreover, under Florida law, the trial judge may, as in the instant case, "state on the record the length of sentence which, on the basis of information then available to the judge, appears to be appropriate for the charged offense." *Warner*, 762 So. 2d at 514.

Finally, Petitioner's reliance on the rule governing the conduct of a plea hearing in federal court is misplaced. *See* Fed. R. Crim. P. 11.[11] It is well-settled that the procedure prescribed by Rule 11 is not the constitutional minimum required for a knowing and voluntary plea; it merely constitutes the procedure for federal courts. *See Frank*, 646 F.2d at 887. Rule 11 is not binding on the states. *Gaddy v. Linahan*, 780 F.2d 935, 943 n.8 (11th Cir. 1986) (citation omitted). Moreover, a "formal violation of Rule 11 . . . . is neither constitutional nor jurisdictional," and thus not a basis for collateral relief. *United States v. Timmreck*, 441 U.S. 780, 784 (1979).

The Court concludes that the trial court's finding that Petitioner voluntarily entered his plea is a reasonable determination of the facts in light of the evidence presented, and

---

[11]Rule 11(c) provides, in pertinent part, that "[t]he court must not participate in" plea agreement discussions. The federal and state judiciary, however, function independently of each other, with state court proceedings governed by state procedural rules, not federal ones.

its adjudication of this claim was not contrary to or an unreasonable application of clearly established Federal law. *See* 28 U.S.C. § 2254.

**Ground Two**

In support of his second claim that his plea was not voluntarily entered, Petitioner asserts as follows:

> The trial court went through a limited plea colloquy, and although the court asked if anyone was threatening or forcing Petitioner to admit the one violation of probation, the same was not asked in reference to the 62 new felony counts. The issue of the trial court coercing the plea and its effect on voluntariness was therefore not subject to inquiry.

Dkt. 1 at 5. Respondent contends that this claim is procedurally barred because it was not presented to the trial court. Petitioner argues to the contrary that this claim is exhausted because it "is an essential component of the legal issues involved in the voluntariness of the Petitioner's plea, and that it was therefore subjected to review in both the direct appeal and the Rule 3.850 motion." Petitioner's argument is foreclosed by the Supreme Court's decisions addressing the exhaustion requirement.

As the *Duncan* court held, clearly and unambiguously, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, *he must say so*, not only in federal court, but in state court." *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995). As clarified more recently in *Baldwin v. Reese*, a decision focusing upon the requirement of "fair presentation" of a petitioner's claims in state court, the Supreme Court held that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" 541 U.S. 27, 32 (2004). *See also McNair v. Campbell*,

416 F.3d 1291, 1302 (11th Cir. 2005) (citations omitted) ("[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record." (citation omitted)).

Federal habeas courts require that a petitioner present his claims to the trial court "such that a reasonable reader would understand each claim's particular legal basis and specific *factual* foundation." *McNair*, 416 F.3d at 1302 (citation omitted; emphasis added). A review of the record confirms that in his Rule 3.850 motion, Petitioner alleged, as he does in Ground One herein, that he was coerced into entering a plea by Judge Luce's initiation of and participation in the plea agreement discussions, events that preceded Petitioner's decision to accept the State's plea offer. Petitioner did not assert or in any way imply that the subsequent plea colloquy was flawed either on direct appeal or in his Rule 3.850 motion (Dkt. 7, Ex. 8 at 2-3).

Title 28 U.S.C. § 2254(b) requires the exhaustion of all state court remedies before a federal habeas corpus application will be entertained. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *see also Henderson*, 353 F.3d at 891 ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (quoting *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001)); *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights") (quoting *Duncan*, 513 U.S. at 365); *see also Brown v. Estelle*, 701 F.2d 494, 495 (5th Cir. 1983) ("The exhaustion requirement is not satisfied if a petitioner presents new legal theories or entirely new factual claims in support of the writ

before the federal court."). The exhaustion of the federal dimension of a habeas claim is a statutory requirement that cannot be waived by this Court. *See* 28 U.S.C. 2254(b).

Nothing in the record suggests that the statutory exceptions to the exhaustion requirement are applicable in the present case. *See* 28 U.S.C. § 2254(b)(1)(B). The failure to properly exhaust state court remedies for Ground Two when remedies were available results in a procedural default of this claim. *O'Sullivan*, 526 U.S. at 847. Under the rules governing post-conviction relief in Florida courts, Petitioner's claim is procedurally defaulted because any new petition would be barred by multiple procedural rules, including the statute of limitations. *See* Fla. R. Crim. P. 3.850.

As state remedies are no longer available, Petitioner must show either "cause and prejudice" or "manifest injustice" to overcome this procedural default. *Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993). Petitioner offers no reason for his failure to raise this claim in the state courts and the Court discerns none that would amount to good cause to overcome his default.  There is nothing in the record that suggests a miscarriage of justice will occur if the Court does not reach the merits of this claim. *See Murray v. Carrier*, 477 U.S. 478, 495-96 (1986). Because Petitioner fails to proffer "specific facts which support a finding that one of these exceptions to the procedural default rule exists," *Hill v. Jones*, 81 F.3d 1015, 1023 (11th Cir. 1996), it would be improper for this Court to address the merits of Ground Two. *See Kight v. Singletary*, 50 F.3d 1539, 1541 (11th Cir. 1995).

### Conclusion

For the foregoing reasons, the Court finds that Petitioner is not entitled to federal habeas relief.

ACCORDINGLY, the Court **ORDERS** that:

1. The Petition for Writ of Habeas Corpus (Dkt. 1) is **DENIED**.

2. The **Clerk** shall enter judgment against Petitioner, terminate all pending motions, and close this case.

**ORDERED** in Tampa, Florida, on *March 30th*, 2007.


JAMES D. WHITTEMORE
United States District Judge


Copy to: Petitioner, *pro se*, Counsel of Record